The CITY AND COUNTY OF DENVER,
et al., Plaintiffs,

v.

ADOLPH COORS COMPANY,
et al., Defendant.

Civ. A. No. 91–F–2233.

United States District Court,
D. Colorado.

Dec. 22, 1992.

Daniel E. Muse, T. Shaun Sullivan, Steven J. Coon, Russell E. Yates, Carolyn L. Buchholz, James D. Ellman, Denver, CO, P.B. ("Lynn") Walker, Englewood, CO, Robert S. Treece, Daniel S. Maus, Denver, CO, for plaintiffs.

Peter Breitenstein, Howard Holme, Denver, CO, for J & H Shapiro, Inc.

ORDER 1992–17

SHERMAN G. FINESILVER, Chief Judge.

This is a case involving environmental contamination at the Lowry Landfill site ("Lowry"), operated at various times by Plaintiffs City and County of Denver ("Denver"), Waste Management of Colorado, Inc. ("WMC"), and Chemical Waste Management, Inc. ("CWM"). This matter comes before the Court on the motion of

defendants J & H Shapiro, Inc. and J & H Shapiro, an alleged partnership, for summary judgment. Plaintiffs have also filed a Motion to Compel Discovery of Defendant J & H Shapiro, Inc. a/k/a J & H Shapiro. Jurisdiction is based upon 28 U.S.C.A. § 1331 and 42 U.S.C.A. §§ 9601 and 9607. The litigants have fully briefed the issues. For the reasons stated below, the motion for summary judgment is GRANTED and the motion to compel is DEEMED MOOT.

## I. Background

Lowry, located 20 miles southeast of Denver, was listed on the CERCLA National Priorities List ("NPL") on September 21, 1984, as a hazardous waste site. 49 Fed. Reg. 37,070 (1984). Plaintiffs, all current or former operators of Lowry, seek damages from numerous alleged generators and transporters of the hazardous waste under sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA" or "Superfund"). 42 U.S.C.A. §§ 9601 *et seq.* (West 1983 & Supp.1992). Plaintiff Denver also alleges certain common law causes of action.

The Lowry Landfill was owned and operated by the United States beginning in the early 1940s. On July 15, 1964, the United States conveyed the site to Denver by quitclaim deed with the condition that the site be used as a landfill at least until 1984. Denver operated the site from 1964 to 1980 as a regional industrial and municipal waste site.

On July 7, 1980, CWM executed a contract with Denver to operate the site and WMC operated the site from August 12, 1980 until August 3, 1990. Denver, CWM, and WMC claim that they have incurred and will continue to incur response, cleanup, and remediation costs. Defendants are entities alleged to be either generators or transporters of hazardous wastes to Lowry. Most defendants have been identified by the Environmental Protection Agency ("EPA") as potentially-responsible parties ("PRPs") at the Lowry Landfill site pursuant to 42 U.S.C.A. § 9607(a) (West 1983 & Supp.1992).

Plaintiffs claim that one of the PRPs identified by the EPA is Kwal Paints, Inc. ("Kwal Paints"), and that J & H Shapiro, Inc. and J & H Shapiro, a partnership (collectively, "the Shapiro Defendants") are liable as successors to Kwal Paints. Plaintiffs allege that J & H Shapiro, Inc. was a corporation formed by Jack and Helen Shapiro to wind up the affairs of Kwal Paints, a paint manufacturing company of which Jack and Helen Shapiro were officers, directors, and shareholders. It is undisputed that J & H Shapiro, Inc. dissolved on November 30, 1982. Plaintiffs further assert that Jack and Helen Shapiro were partners in J & H Shapiro, a Colorado partnership whose existence was represented by both Jack Shapiro and his attorney in certified responses to the EPA. Def.Mot. for Summ.J., Exh. 2. Plaintiffs brought this action on December 24, 1991. The Shapiro Defendants moved for summary judgment.

## II. Summary Judgment Standard

Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 242 (10th Cir.1991); *Metz v. United States,* 933 F.2d 802, 804 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991); *Continental Casualty Co. v. P.D.C., Inc.,* 931 F.2d 1429, 1430 (10th Cir.1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Dayco Prods., Inc.,* 758 F.Supp. 630, 631 (D.Colo.1990).

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. *Newport Steel Corp. v. Thompson,* 757 F.Supp. 1152, 1155 (D.Colo. 1990). All doubts must be resolved in fa-

vor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir.1991); *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 889 (10th Cir.1991).

In a motion for summary judgment, the moving party's initial burden is slight. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the Supreme Court held that the language of rule 56(c) does not require the moving party to show an absence of issues of material fact in order to be awarded summary judgment. Rule 56 does not require the movant to negate the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.*

Once the movant has made an initial showing, the burden of proof shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552. The nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan*, 931 F.2d 636, 639 (10th Cir.1991). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir.1987).

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact remaining. In *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11, the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

### III. Legal Existence of Responsible Parties

In the instant matter, the litigants dispute the legal existence of the alleged J & H Shapiro partnership and the status of J & H Shapiro, Inc.[1] Specifically, Defendants claim that J & H Shapiro, Inc., dissolved on November 30, 1982, and that it does not, therefore, exist as a person or legal entity. Defendants further claim that the alleged partnership, J & H Shapiro, has never existed and is also not a person or legal entity. In 42 U.S.C.A. § 9601(21), CERCLA defines a person as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission political subdivision of a State, or any interstate body."

### A. *J & H Shapiro, Inc.*

The legal status of J & H Shapiro, Inc. is governed by Colorado law. Defendants contend that because this action was not brought within two years of the dissolution of J & H Shapiro, Inc., Colorado law dictates that all claims against J & H Shapiro, Inc. must be dismissed. C.R.S. § 7–26–120(1) provides:

> The dissolution of a corporation in any manner shall not take away or impair any remedy available to or against the corporation, its directors, officers, or shareholders for any right or claim existing or any liability incurred prior to such dissolution if *action or other proceeding thereon is commenced within two years after the date of the dissolution.*

The parties disagree, however, on whether Colorado state law is preempted by CERCLA. In support of their position that Colorado state law is not preempted by CERCLA, Defendants point the Court to Fed.R.Civ.P. 17(b) and the common law of corporations. Rule 17(b) states, in part, that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."

---

1. Defendants also move to dismiss a state law claim for nuisance.

Defendants also cite numerous court decisions in support of their claim that Rule 17(b) governs this case. *See, e.g., Chicago T. & T. Co. v. Forty–One Thirty–Six W. Bldg. Corp.*, 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147 (1937) (a private corporation exists only under the express state laws that created it, and once those laws extinguish the corporation's existence, the federal government is powerless to resurrect it); *Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178, 1181 (10th Cir.1989) (under appropriate enabling legislation, dissolved corporations have the power to sue and be sued for a period of time specified in the legislation); *R. v. McGinnis Theatres & Pay T.V. v. Video Independent TH*, 386 F.2d 592, 595 (10th Cir.), *cert. denied*, 390 U.S. 1014, 88 S.Ct. 1265, 20 L.Ed.2d 163 (1968) (the authority to revive a corporation must have statutory support similar to that which created it). None of these cases, however, implicate a conflict between state law and CERCLA.

Several courts have held that, regardless of the mandates of Fed.R.Civ.P. 17(b) and state law, a dissolved corporation that has not distributed its assets may be subject to suit under CERCLA. *Stychno v. Ohio Edison Co.*, 806 F.Supp. 663 (N.D.Ohio 1992); *Traverse Bay Area Int. School Dist. v. Hitco, Inc.*, 762 F.Supp. 1298 (W.D.Mich. 1991); *U.S. v. Distler*, 741 F.Supp. 643 (W.D.Ky.1990) (same); *United States v. Sharon Steel, Corp.*, 681 F.Supp. 1492, 1497 (D.Utah 1987) (same). *But see Levin Metals v. Parr–Richmond Terminal Co.*, 817 F.2d 1448 (9th Cir.1987) (relying on Rule 17(b) to defer to state capacity law); *Columbia River Service Corp. v. Gilman*, 751 F.Supp. 1448 (W.D.Wash.1990) (following, but criticizing, the binding precedent of the circuit court).

■ Courts have supported their finding that CERCLA supersedes Rule 17(b) to preempt state law by noting, as did the District Court for the District of Utah in *Sharon Steel*, that "Congress clearly intended to hold responsible parties liable for cleanup costs '[n]otwithstanding any other provision or rule of law.'" *Sharon Steel*, 681 F.Supp. at 1498–99 (quoting 42 U.S.C.A. § 9607). Any other result would be contrary to Congress' broadly directed effort to clean up the environment, and would allow corporations to escape CERCLA liability simply by dissolving before the government brought suit, perhaps to incorporate again after they had waited for others to pay to clean up their hazardous wastes. *See Sharon Steel*, 681 F.Supp. at 1498; *see also United States v. Mexico Feed and Seed Co., Inc.*, 980 F.2d 478, 487 (8th Cir.1992) (noting that purpose of corporate successor liability is to prevent corporations from evading their liabilities through changes of ownership). The corporations law of many states mirrors this concern, holding successors liable for the debts and obligations of the selling corporation where the transfer of assets was for the fraudulent purpose of escaping liability. Notably, corporate dissolution is also not among the enumerated defenses to liability embodied in 42 U.S.C.A. § 9607(b). We agree that if the resources of dissolved corporations are proven to be reasonably discrete and identifiable, those resources should be available for cleanup and the party who benefited from the cheap disposal should be held responsible.

■ Several other courts have chosen to implement the reasoning that we now adopt, rejecting *Levin Metals'* less sound deference to state capacity law. *See Chesapeake and Potomac Telephone Co. of Virginia v. Peck Iron & Metal Co., Inc.*, 814 F.Supp. 1266 (E.D.Va.1992); *Soo Line Railroad Co. v. B.J. Carney & Co.*, 797 F.Supp. 1472, 1481 n. 2 (D.Minn.1992) (CERCLA preempts state capacity statutes); *Traverse Bay*, 762 F.Supp. at 1301 (noting that of the cases dealing with this issue, the approach of *Sharon Steel* is most sound); *Distler*, 741 F.Supp. at 646 (same); *Columbia River*, 751 F.Supp. at 1453 (criticizing *Levin Metals* though bound to follow it). An additional reason for not subjecting environmental waste cleanup to the same statutory limitations as creditor claims is that the existence of environmental contamination, unlike the existence of a creditor claim, will be seldom if ever ascertainable within two years. In-

deed, the problems of litigating and remedying environmental contamination are more comparable to the difficulties faced by plaintiffs in toxic torts cases. The standard in toxic torts is instructive: an action may be brought within a statutorily prescribed period of time after a plaintiff either knew of the injury or had reason to know of it. Accordingly, we find that CERCLA must preempt state capacity law and supersede Fed.R.Civ.P. 17(b).

■ The primary issue in this case, then, is whether J & H Shapiro, Inc. possesses or controls an identifiable body of assets attributable to the corporation. *See Sharon Steel,* 681 F.Supp. at 1498; *Columbia River Service,* 751 F.Supp. at 1453; *Traverse Bay,* 762 F.Supp. at 1301–02; *Distler,* 741 F.Supp. at 646–47. Whether a corporation is a "person" is closely intertwined with whether it still holds assets. *See Traverse Bay,* 762 F.Supp. at 1301. "If the resources of these dissolved corporations are available, those resources should be available for cleanup and the party who benefited from the cheap disposal should be held responsible." *Columbia River Service,* 751 F.Supp. at 1453. On the other hand, a court would be foolish to allow a suit against a dissolved corporation that has distributed its assets to the far corners of the country. Such a corporation, having no single pool of assets against which a judgment could attach, presents insurmountable problems of judgment collection. The administrative costs and barriers to trying to chase down every distributed dollar from long-gone stockholders would be prohibitive. Fully dissolved corporations would also present inherent difficulties in the parties' ability to gather evidence and a dissolved defendant corporation's ability to present an adequate defense. For legal and practical purposes, a dissolved corporation that has widely disseminated its assets may as well not exist.

■ The parties disagree on the question of whether any party in this case retains control over an identifiable body of assets. Plaintiffs allege, on information and belief, that such assets exist and reside with Helen Shapiro, the Estate of Jack Shapiro, and the Trust of Jack Shapiro, all nonparties to this action. Defendants assert that the assets of J & H Shapiro, Inc. and J & H Shapiro, a partnership, were distributed long ago. If Helen Shapiro, the Estate of Jack Shapiro, and the Trust of Jack Shapiro were in this case, we would have a material issue of fact. However, the parties that Plaintiffs have listed as controlling the alleged pool of assets are not in this case. A plaintiff cannot avoid summary judgment as to a defendant merely by stating that it could avoid summary judgment as to outside parties. The parties that Plaintiffs want are not in this case; the Defendants that Plaintiffs sued can no longer be in this case.

Furthermore, for the same reasons that this Court has twice declined to grant Plaintiffs leave to amend their complaint to add other Shapiro-related defendants, the Court will not allow Plaintiffs to remedy their complaint now. The Shapiro defendants are not major players in this litigation and their potential liability is relatively minor. This is a complex, multi-party environmental contamination case involving justifiably strict time deadlines and important considerations of judicial and party resources. In the interests of judicial economy and manageability of a case that might otherwise be a many-headed hydra, the Court will not at this late date allow the joinder of parties which would disrupt all time constraints in the case and require a trial within a trial on the issue not of environmental contamination but of whether certain parties control an identifiable pool of assets.

### B. *J & H Shapiro, an alleged partnership*

The analysis applied to the Shapiro corporation also applies to the alleged partnership. For the same reasons that we grant summary judgment as to J & H Shapiro, Inc., we see no basis for keeping the alleged Shapiro partnership in this case. By dismissing J & H Shapiro, an alleged partnership, however, we do not express an opinion regarding its legal existence as a partnership.

## C. *Other Issues*

It follows that Plaintiffs' state law claim for nuisance has no "common nucleus of operative fact" with any federal claim remaining against a party to this litigation, *see United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and must therefore also be dismissed. Finally, Plaintiff's Motion to Compel Discovery of Defendant J & H Shapiro, Inc. a/k/a J & H Shapiro must be deemed moot.

### IV.

Accordingly, it is ordered that:

(1) Defendants' Motion for Summary Judgment, filed August 14, 1992, is GRANTED.

(2) Plaintiff's Motion to Compel Discovery of Defendant J & H Shapiro, Inc. a/k/a J & H Shapiro, filed November 17, 1992, is DEEMED MOOT.

(3) Defendants' names are to be removed from the caption of this case.