**AM PROPERTIES CORPORATION,**
**Plaintiff,**

v.

**GTE PRODUCTS CORPORATION, GTE Products of Connecticut Corporation, GTE Sylvania Wiring Devices Inc., and Cirfico Holdings Corporation, Defendants.**

**Civ. A. No. 92–1728 (MLP).**

United States District Court,
D. New Jersey.

Feb. 15, 1994.

Vincent E. Gentile, Cohen, Shapiro, Polisher, Shiekman and Cohen, Lawrenceville, NJ, for plaintiff.

Robert A. Bourque, Simpson Thacher & Bartlett, New York City, Steven L. Lapidus, Robinson, St. John & Wayne, Newark, NJ, for GTE Products Corp., GTE Products of Connecticut Corp., GTE Sylvania Wiring Devices, Inc.

Ezra D. Rosenberg, Fox, Rothschild, O'Brien & Frankel, Lawrenceville, NJ, Frank A. Lattal, Connell, Foley & Geiser, Roseland, NJ, for Cirfico Holdings Corp.

## MEMORANDUM AND ORDER

PARELL, District Judge.

This matter comes before the Court on the renewed motion of defendant Cirfico Holdings Corporation ("Cirfico") for summary judgment. Plaintiff Am Properties Corporation ("APC") and defendants GTE Products Corporation, GTE Products of Connecticut Corporation and GTE Sylvania Wiring Devices Incorporated (collectively "GTE") oppose the motion in separate memoranda. For the reasons stated, the motion is granted.

### BACKGROUND

#### A. Procedural History

This action concerns claims arising from alleged environmental liabilities for the clean-up of several properties, including those formerly owned by Cirfico. Cirfico is a dissolved Delaware corporation. Plaintiff APC has or had an ownership in these properties. (Compl. ¶ 10.)

APC commenced this action on April 23, 1992 under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") 42 U.S.C. § 9601 et seq. APC sought to recover costs it incurred and will incur for the investigation and/or remediation of environmental contamination of the subject properties. Defendants in this action are GTE and Cirfico.

The Complaint contained the following relevant counts: (1) cost recovery under CERCLA section 107(a); (2) contribution under CERCLA section 113; (5) negligence; (6) ultrahazardous activity; (7) contribution and indemnification; (8) New Jersey Spill Compensation and Control Act, N.J.Stat. Ann. 58:10–23.11 et seq.; and, (9) damages under the Connecticut Transfer Act, Conn. Gen. § 22a–452. GTE filed cross-claims for indemnification and contribution against Cirfico.

By Memorandum and Order filed December 4, 1992, the Court dismissed, on motion of Cirfico, the state statute and common law claims against Cirfico because a dissolved Delaware corporation is only subject to suit for a three year period after dissolution. The Court, however, denied Cirfico's motion for summary judgment on APC's CERCLA claims. The Court found that Cirfico could still be liable under CERCLA because CERCLA preempts state statutes governing the capacity of a dissolved corporation to be sued, and provided the parties with the opportunity to have discovery in order to determine whether Cirfico possessed assets that subject it to CERCLA liability. The parties have since conducted discovery on what assets, if any, Cirfico still holds.

#### B. Cirfico's "Assets"

Cirfico was a corporation, incorporated under the laws of Delaware as Circle F. Industries, Inc. in 1971. (Ring Aff.) Circle F, or its predecessors, allegedly owned the Meade Street Property, the Monmouth Street Property (both located in Trenton, New Jersey) and the Plainville, Connecticut Property (collectively, the "subject properties"). (Compl. ¶¶ 18, 26 & 34.) GTE Products and Circle F entered into a September 20, 1979 agreement pursuant to which the subject properties,

1010

among others, were transferred to GTE Sylvania. Cirfico had a contractual right to indemnification from GTE as a result of that agreement. (APC's Br. at 2, 6; Gentile Cert. ¶ 3, Ex. B.) On December 14, 1979, Circle F filed a Certificate of Amendment changing its corporate name to Cirfico. (Ring Aff.)

Circle F had various insurance policies between 1968 and 1980. (APC's Br. at 2, n. 1.; Gentile Cert. ¶ 1.) According to APC, Cirfico paid more than $100,000 in premiums for general liability and insurance coverage in 1979. (Gentile Cert. ¶ 2, Ex. A.) APC contends that these policies may provide coverage for the claims asserted in this litigation. (APC's Br. at 2.)

On March 12, 1984, Cirfico's Board of Directors adopted a Plan of Dissolution and Liquidation. The Plan, which provided for liquidation on or before May 13, 1985, was approved by Cirfico's stockholders on May 14, 1984. On June 18, 1984, Cirfico distributed by way of liquidation a total of $7,609,420 to its stockholders, retaining approximately $3,800,000, of which $1,140,000 was transferred to a liquidating trust to satisfy liabilities upon dissolution. The co-trustees were Victor Seidman and Edward Ring. (Ring Aff.)

Cirfico filed for dissolution in June 1984. On July 23, 1984, the Secretary of State of the State of Delaware certified that Cirfico was dissolved in accordance with the law of Delaware. In the meanwhile, Cirfico continued the liquidation of its assets. On April 8, 1985, Cirfico's Board of Directors directed payment of a final liquidating distribution to stockholders of record as of May 8, 1985 in the amount of $2.50 per share or $2,717,650 aggregate. Cirfico's Stock Transfer book was permanently closed that same day. In December 1988, the Liquidating Trust terminated and final distribution was made to the stockholders of all assets that had been retained in the liquidating trust. (Ring Aff.)

*C. Present Motion*

Cirfico argues in this motion that none of the facts discussed above suggest that it is a proper defendant in this CERCLA case. Cirfico, a dissolved corporation, requests summary judgment on the ground that it

does not possess assets that would render it amenable to suit under CERCLA.

In response, APC argues that Cirfico's insurance policies and contractual indemnification rights constitute assets of Cirfico, such that Cirfico, a dissolved corporation, may properly be sued under CERCLA. GTE similarly contends in opposition to Cirfico's motion that the insurance policies are assets of Cirfico for purposes of this CERCLA case. GTE argues in the alternative that if Cirfico's insurance policies are not assets, Cirfico should be dismissed subject to the limited right of GTE to assert CERCLA claims against Cirfico to protect potential claims, allegedly permitted under Delaware law, against Cirfico's former shareholders.

*SUMMARY JUDGMENT STANDARD*

A court shall enter summary judgment under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and that the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this initial burden, the opposing party must establish that a genuine issue of fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied*, 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). The opposing party cannot rest on mere allegation; it must present actual evidence that creates a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citing *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Issues of fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* 477 U.S. at 248, 106 S.Ct. at 2510.

*DISCUSSION*

*A. Non–CERCLA Claims*

It has previously been determined in this litigation that Cirfico is not subject to

suit under common law and state statute theories of liability. Fed.R.Civ.P. 17(b) provides in relevant part that

> [t]he capacity of a corporation to sue or be sued shall be determined by the law under which it is organized.

Cirfico was organized under the laws of the State of Delaware, which provide that a dissolving corporation is generally only subject to suit for a three year period after dissolution. Del.Code Ann. tit. 8, § 278.

Cirfico dissolved in 1984, more than three years prior to the present suit. Accordingly, the common law and state statute claims against Cirfico have been dismissed pursuant to Fed.R.Civ.P. 17(b).

*B. CERCLA Claims*

This Court has also already addressed, in this litigation, the issue of whether Cirfico's non-amenability to suit under Delaware law shields it from suit under CERCLA. CERCLA broadly establishes the liability of owners and operators of hazardous waste processing and disposal facilities. CERCLA provides in relevant part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed of ...
>
> shall be liable....

42 U.S.C. § 9607(a)(2). CERCLA defines a "person" liable under the statute to include a corporation. 42 U.S.C. § 9601(21). CERCLA is silent, however, as to whether a dissolved corporation and its shareholders and distributees may be liable for response costs.

The language of CERCLA that provides for liability "notwithstanding any other provision or rule of law," 42 U.S.C. § 9607(a), conflicts with Fed.R.Civ.P. 17(b) which states that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." The courts that

have addressed the liability of dissolved corporations under CERCLA have disagreed as to whether CERCLA preempts state capacity laws. *Compare BASF Corp. v. Central Transport,* 830 F.Supp. 1011, 1012–13 (E.D.Mich.1993), *Chesapeake and Potomac Tel. Co. v. Peck Iron & Metal Co.,* 814 F.Supp. 1285, 1291 (E.D.Va.1993), *City and County of Denver v. Adolph Coors Co.,* 813 F.Supp. 1471, 1474–75 (D.Colo.1992), *Stychno v. Ohio Edison Co.,* 806 F.Supp. 663, 669–70 (N.D.Ohio 1992), *Waste Management of Wisconsin, Inc. v. Uniroyal, Inc.,* No. 91–C–1020, 1992 WL 227379 *6, 1992 U.S.Dist. LEXIS 12003, at *17 (W.D.Wis. June 2, 1992), *Bancamerica Commercial Corp. v. Mosher Steel of Kansas, Inc.,* No. 90–2325–V, 1992 WL 81983 *3, 1992 U.S.Dist. LEXIS 4318, at *13 (D.Kan. March 12, 1992), *Traverse Bay Area Intermediate School Dist. v. Hitco, Inc.,* 762 F.Supp. 1298 (W.D.Mich. 1991), *Allied Corp. v. Acme Solvents Reclaiming, Inc.,* No. 86–C–20377, 1990 WL 322940 *5, 1990 U.S.Dist. LEXIS 19545, at *15–16 (N.D.Ill. July 6, 1990), *U.S. v. Distler,* 741 F.Supp. 643 (W.D.Ky.1990), *U.S. v. Sharon Steel Corp.,* 681 F.Supp. 1492 (D.Utah 1987) (cases holding that CERCLA preempts state capacity statutes to the extent their operation would shield a dissolved corporation from CERCLA liability) *with Louisiana–Pacific Corp. v. ASARCO, Inc.,* 5 F.3d 431, 433–34 (9th Cir.1993), *Levin Metals Corp. v. Parr–Richmond Terminal Co.,* 817 F.2d 1448 (9th Cir.1987), *Onan Corp. v. Industrial Steel Corp.,* 770 F.Supp. 490, 495 (D.Minn.1989), *aff'd without op.,* 909 F.2d 511 (8th Cir.), *cert. denied,* 498 U.S. 968, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990),[1] *Columbia River Service Corp. v. Gilman,* 751 F.Supp. 1448, 1453 (W.D.Wash.1990) (The *Columbia River Service* Court disagreed with the *Levin* analysis but was constrained to follow it as binding precedent in the Ninth Circuit) (cases holding that state corporation capacity statutes are not preempted by CERCLA).

After a review of the relevant case law, it appears that state statutes governing the capacity of a dissolved corporation to be

---

[1]. In dicta, the District Court of Minnesota has apparently retreated from this decision in noting that CERCLA does preempt state corporate dissolution law. *See Soo Line Railroad Co. v. B.J. Carney & Co.,* 797 F.Supp. 1472, 1481 n. 2 (D.Minn.1992).

sued are preempted by the overall purposes of CERCLA. Federal law may preempt state law when federal and state law conflict. *See Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Mktg. & Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2522, 81 L.Ed.2d 399 (1984). A conflict between federal and state law arises "when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

■ CERCLA is to be construed broadly and liberally to effect its laudatory purpose of providing a federal response to problems of national magnitude resulting from hazardous waste disposal. *See United States v. Reilly Tar & Chem. Corp.,* 546 F.Supp. 1100, 1112 (D.Minn.1982). "Whenever possible ... CERCLA places the ultimate financial burden of toxic waste cleanup on those responsible for creating the harmful conditions." *Artesian Water Co. v. Government of New Castle County,* 659 F.Supp. 1269, 1276 (D.Del.1987). The "notwithstanding" language of CERCLA specifically supersedes laws that would frustrate the purpose of CERCLA and relieve an otherwise responsible party from liability. *See Traverse Bay,* 762 F.Supp. at 1301 (citing *Sharon Steel,* 681 F.Supp. at 1494; *but see* Fed.R.Civ.P. 17(b) ("The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."), *Onan Corp.,* 770 F.Supp. at 495 ("[n]ot even the important policy goals underlying CERCLA c[ould] resurrect" a dead corporation). Thus, CERCLA must preempt state laws governing the capacity of dissolved corporations to be sued.

To find that state corporate-capacity statutes operate to preclude CERCLA liability under Fed.R.Civ.P. 17(b) would be contrary to Congress' broadly directed effort to clean up the environment, and "would allow corporations to escape CERCLA liability by dissolving before the government brought suit, perhaps to incorporate again after they have waited for others to pay to clean up the hazardous wastes." *City and County of Denver,* 813 F.Supp. at 1474. Indeed, corporate dissolution is not among the enumerated

defenses to liability embodied in 42 U.S.C. § 9607(b), and it does not appear that Congressional intent was to permit fifty different schemes of liability based on state statutes defining corporate capacity to be sued. *See Stychno,* 806 F.Supp. at 669. "Since environmental cleanup may occur years after the activities that caused the pollution, mere dissolution should not be allowed to block further inquiry into the status of the identifiable resources of the companies responsible for the pollution." *BASF Corp.,* 830 F.Supp. at 1013.

### C. *Cirfico's Identifiable Assets*

■ With the determination that CERCLA preempts state corporation capacity statutes, it becomes necessary to address Cirfico's present motion. The issue is whether Cirfico, as a dissolved corporation, possesses assets that would make it amenable to suit under CERCLA. Courts holding that CERCLA preempts state dissolution statutes disagree on the question of whether CERCLA liability may be imposed on a dissolved corporation whose assets have been completely distributed. Courts have adopted two general approaches to this issue.

Under the first approach, the majority of courts have drawn a distinction between a "dead" and a "dead and buried" corporation. A "dead" corporation is one that is dissolved but has not yet distributed its assets. A "dead and buried" corporation is one that has distributed all its assets to its shareholders. *See Sharon Steel,* 681 F.Supp. at 1498. Applying the distinction, if a corporation is "dead" but not buried, then it is a "person" amenable to suit under CERCLA. *See Traverse Bay,* 762 F.Supp. at 1301–02.

The courts adopting the first approach reason that a "dead and buried" corporation cannot be included within the definition of a liable "person" under CERCLA, 42 U.S.C. § 9607(a)(2). *See, e.g., Distler,* 741 F.Supp. at 646–47. A non-existent corporation cannot be a "person" because

[i]n such a case there is no entity to sue or to defend against a lawsuit, and any judgment entered by the court would be unenforceable much less uncollectible.

*Traverse Bay,* 762 F.Supp. at 1301; *see also Chesapeake and Potomac Tel.,* 814 F.Supp. at 1291; *City and County of Denver,* 813 F.Supp. at 1475 ("For legal and practical purposes, a dissolved corporation [CERCLA defendant] that has widely disseminated its assets may as well not exist"); *Stychno,* 806 F.Supp. at 669–71 ("Whether an inactive corporation falls within the scope of the definition of "person" under CERCLA necessarily depends upon whether that corporation still holds assets.") Where "the funeral is still going on" and "corporate assets that might have been used to pay cleanup costs have not yet been distributed to shareholders," however, there is no good reason not to hold the corporation liable under CERCLA. *Sharon Steel,* 681 F.Supp. at 1498.

Under the second approach, courts have held that CERCLA liability of a dissolved corporation should not hinge on whether the dissolved corporation has already distributed its assets. *See United States v. SCA Services of Indiana, Inc.,* 837 F.Supp. 946, 953–956 (N.D.Ind.1993); *Allied Corp.,* 1990 WL 322940 *5, 1990 U.S.Dist. LEXIS 19545, at *15–16 (N.D.Ill. July 6, 1990). These courts reason that once it is determined that CERCLA preempts the applicable state law capacity statute incorporated through Fed. R.Civ.P. 17(b), the parameters of that liability must be found from CERCLA itself. CERCLA is intended to assure that "those who have engaged in enterprises which generate hazardous waste 'bear the costs and responsibility of remedying the harmful conditions they created.'" *Allied Corp.,* 1990 WL 322940 *5, 1990 U.S.Dist. LEXIS 19545, at *15 (quoting *U.S. v. Reilly Tar and Chemical Corp.,* 546 F.Supp. 1100, 1112 (D.Minn. 1982)). These goals, according to the *Allied Corp.* court, would be "entirely frustrated by any interpretation of the statute which allowed a corporation to merely dissolve itself and distribute its assets prior to the filing of a CERCLA action in order to completely absolve itself of any liability under the statute." *Id.* 1990 WL 322940, at *4, 1990 U.S.Dist. LEXIS 19545, at *13.

The courts that permit CERCLA suits against corporations without limitation as to whether the corporation is dissolved or its assets have been distributed further point out that CERCLA does not define "corporation" to exclude dissolved corporations that have distributed their assets. These courts contend that the such corporations:

> will not be held to different standards in different states. Each corporation is required to properly dissolve under its state laws before even attempting to argue that it is not amenable to suit by a CERCLA plaintiff. And finally, all corporations will be treated the same under the *Allied* approach, as all corporations, regardless of their current status, are amenable to suit under CERCLA.

*SCA Services,* 837 F.Supp. at 954; *see also Allied Corp.,* 1990 WL 322940, at *5, 1990 U.S.Dist. LEXIS 19545, at *15 ("Congress has previously placed certain definitional limitations on the term "corporation" in other remedial legislation such as the Sherman Act and could have done so in CERCLA had that been Congress' intent.").

This Court concludes that distinguishing between a "dead" dissolved corporation and a "dead and buried" dissolved corporation that has no identifiable assets is the preferred approach. Whether a corporation is a "person" is closely intertwined with whether it holds assets. *See Traverse Bay,* 762 F.Supp. at 1301. If the resources of a dissolved corporation that is not "buried" are available, those resources should be available for cleanup. While the Court recognizes that the determination of the scope of CERCLA liability must not turn on the collectibility of judgments, to allow a suit under CERCLA against a dissolved corporation that has completely wound down and distributed its assets would present various litigation difficulties and judgment collection problems that "[f]or legal and practical purposes, [such a corporation] may as well not exist". *Adolph Coors Co.,* 813 F.Supp. at 1475; *but cf. SCA Services,* 837 F.Supp. at 954 (citing *Sharon Steel,* 681 F.Supp. at 1498 ("the fact that a defendant may be judgment proof does not affect its capacity to be sued."))

■ Here, it is undisputed that Cirfico dissolved eight years before suit was commenced. Cirfico also distributed all of its assets more than three years before this suit

was commenced. Accordingly, it appears that Cirfico is dead and buried in that the assets that have been distributed are beyond the reach of CERCLA.

Discovery here, however, has also revealed a number of insurance policies that were issued to Cirfico or its predecessors.[2] Further, APC argues that under the 1979 Purchase and Sales Agreement, Cirfico has a right to contribution from GTE. (Gentile Cert., Ex. B.) At issue then is whether insurance policies or contractual indemnification rights of a dissolved corporation may constitute assets that would permit recovery under CERCLA for pre-dissolution liabilities of a dissolved corporation.

APC and GTE argue that whether or not the insurance policies ultimately would be held to provide coverage, they constitute, for the purpose of the present motion, a potential source of funds to cover APC's claims. These parties contend that it is inequitable to hold that insurers have no indemnity obligations after a corporation's dissolution because it would bestow a windfall on the carriers while depriving the claimants of potential recovery. (APC's Br. at 3.)

In support of its position, APC points to the decision of the California Supreme Court in *Penasquitos, Inc. v. Superior Court*, 53 Cal.3d 1180, 283 Cal.Rptr. 135, 812 P.2d 154 (1991). In that case, the California Supreme Court interpreted California's Corporation Code to permit suits against a dissolved corporation for injury or damage caused by the corporation's predissolution activity but occurs or is discovered after dissolution. *Id.* 283 Cal.Rptr. at 143, 812 P.2d at 162. In reaching its holding, the *Penasquitos* court stated that:

[p]laintiffs will be likely to assert postdissolution causes of action only if there is a

prospect of recovery from the dissolved corporation's liability insurance, from undistributed assets, or from assets of the corporation discovered after dissolution. If corporate assets are undistributed or discovered after dissolution, the winding-up process has not been completed; the interest in finality and repose cannot justify barring a postdissolution claim so long as the corporation holds undistributed assets. Similarly, if the corporation has liability insurance coverage, its dissolution provides no reason to excuse the insurer from defending the action and indemnifying those injured by the predissolution activities of its insured, just as a corporation's insolvency or bankruptcy does not release the insurer from payment for damages the corporation has caused....

*Id.* 283 Cal.Rptr. at 141, 812 P.2d at 161. This language, according to APC, suggests that, in the CERCLA context, an insurance carrier ought not to be relieved of its defense and indemnity obligations to a dissolved corporation merely because the happenstance of the insured's dissolution.[3]

Similarly, APC argues that Cirfico's rights under the 1979 Purchase and Sales Agreement constitute an asset of a dissolved corporation sufficient to permit suit under CERCLA. APC claims that discovery suggests that GTE recognized its indemnity obligation to Cirfico by making certain payments on Cirfico's behalf in 1989. (Gentile Cert. ¶ 3, Ex. C; APC's Br. at 7.)

The Court agrees with Cirfico, however, that whether or not a third party indemnitor would be liable for Cirfico's debts if Cirfico, a dissolved corporation with no control over an identifiable body of assets, were still amenable to suit begs the question. *See, e.g., City and County of Denver*, 813 F.Supp. at 1475

---

**2.** The Court observes, without so holding, that at least one district court has apparently held that a dissolved corporation cannot compel its insurer to defend a CERCLA suit. *T–K City Disposal Inc., v. Commercial Union Ins. Co.*, 761 F.Supp. 552 (N.D.Ill.1991).

**3.** APC also relies on, by analogy, unreported New Jersey cases in support of the claim that the New Jersey Spill Compensation and Control Act, N.J.Stat.Ann. § 58:10–23.11 *et seq.*, recognizes a direct claim against insurers. *See The Rechler*

*Partnership v. Aircomo*, No. W–054839–88 (Law Div. March 9, 1992); *Kwiatkowski v. Texaco*, Docket No. C–6322–86 (Chancery Div., July 5, 1989); *but see Selecto–Flash Inc. v. Biddleman*, No. L–1289–90 (Law Div.1990); *Keating v. ABC Detachable Container*, No. L–12152–90 (Ch.Div. 1992). These cases are not persuasive because, among other things, the issue here is whether Cirfico, not its insurer, should be subject to suit under CERCLA.

("The primary issue in this case, then, is whether [the CERCLA defendant] possesses or controls an identifiable body of assets attributable to the corporation.") While the Court is mindful of the broad liability imposed by CERCLA, Cirfico is dead and buried and cannot be sued under CERCLA. *See, e.g., Columbia River Service,* 751 F.Supp. at 1453 ("If the resources of these dissolved corporations are available, those resources should be available for cleanup and the party who benefited from the cheap disposal should be held responsible.") Further, it stands to reason that since Cirfico is not an entity amenable to suit, it is also not an entity which can assert a claim against another party. Thus, it appears that neither GTE (the former indemnitee), nor APC the plaintiff, can successfully assert a claim against Cirfico based on the former indemnification rights of Cirfico. Accordingly, this Court finds that Cirfico is a dissolved corporation that does not possess assets that render it amenable to suit under CERCLA.[4]

**IT IS,** therefore, on this 15th day of February, 1994 **ORDERED** that motion of defendant Cirfico Holdings Corporation for summary judgment be and is hereby **GRANTED.**

---

4. The parties disagree as to whether Delaware law contemplates an action against shareholders after a corporation has dissolved. Moreover, the parties also dispute whether a suit against such shareholders can proceed after the corporation itself can no longer be sued. (GTE Initial Br. of September 11, 1992 at 7–8 (citing *Sharples v. United States,* 209 Ct.Cl. 509, 533 F.2d 550, 551 n. 3 (1976)) ("[w]here corporation distributes assets to shareholder leaving unsatisfied creditors, creditors may recover directly from distrib-

utees"); Del.Code Ann, tit. 8 § 282(c)). GTE asserts that the Court need not resolve this issue if it dismisses Cirfico without prejudice to a limited right by GTE to assert a claim against Cirfico in the future, if necessary, in a subsequent suit against Cirfico's shareholders. How the dismissal of Cirfico from this action, where Cirfico's shareholders are not named as defendants, would impact on such a later suit does not appear to be a matter which this Court must address at this time.